## Corley's Admx. v. Green-Marks Concrete Company.

(Decided May 23, 1913.)

### Appeal from Muhlenberg Circuit Court.

Master and Servant—Blasting—Injury to Servant—When Master Not Liable—Ordinary Care.—When due notice is given of an intended blast, and the servant understanding the danger, undertakes to protect himself, the master is not responsible if the servant is injured by reason of his own want of precaution, it not appearing that the master saw his danger and could have averted it by ordinary care.

ROBERT HARDISON and HOWARD & GRAY for appellant.

NEWTON BELCHER and BELCHER & SPARKS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

The Green-Marks Concrete Company was making an excavation for a new jail to be erected at Greenville; J. C. Corley was working for them and using a pick and

shovel until they struck rock. After they struck rock they began blasting the rock; a wagon was used to haul out the material that was gotten up, it being Corley's duty to clean up and help load the wagon. When blasts were fired the boss would give notice to the men in time for them to get out of the excavation, and get to a place of safety. There were several public ways near by, and it was the duty of certain of the men to go out on these ways and stop people from passing. It was Corley's duty and a man named Bandy, to give this notice at a cetrtain point. There was a stable there; the boss had several times told them to go into this stable, but they had not always done so. After they had been blasting several days in this way, when a blast was made, Corley and Bandy started down in the direction of the stable but stopped after going about 90 feet and waited there four or five minutes for the blast. When the blast was fired, a rock about as large as a man's fist was thrown in the air. Bandy saw the rock and avoided it, but Corley, who did not see it, was struck on the head and killed. This action was brought by his administratrix to recover for his death. The court at the conclusion of the evidence for the plaintiff instructed the jury to find for the defendant, and the plaintiff's petition having been dismissed, she appeals.

The proof on the trial showed the facts we have stated. It also showed that the boss after he gave notice that the blast was to be fired, and when the men were about to light the fuse, saw that the wagon had not gotten out of the way. He then hallooed to the man at the fuse and told him not to light it. They waited until the wagon was out of the way. Corley and Bandy were walking behind the wagon, and when the wagon got out of the way, went on down toward the place where they usually went. After they had gotten away, the boss had the man at the fuse to light another match and apply it to the fuse. The man did this and after lighting the fuse, went to his place of safety, and in about four or five minutes, the blast exploded. The boss after the fuse was lighted went to a point about 50 feet from the blast at which he was protected by the bank, and while standing there, if he had looked, could have seen Corley and Bandy, who were standing about 90 feet from the blast but at a point where the bank did not protect them. That he in fact saw them is not shown. If they had gone down to the stable as they had usually done and gone in the stable they would have

been in no danger; or even if they had gone a few feet further; for Bandy testifies that he got out of the way by moving about fifteen feet further off. When they began blasting the boss asked Corley if he knew how to use powder. He said no he was not a dynamiter, but he knew how to get out of the way. The blast that was put in was a small blast and the accident was entirely due to Corley and Bandy standing at a point where the bank of the excavation did not protect them, and where there was no other protection.

It is insisted that the case should have gone to the jury because the boss did not explain to Corley the danger from the blast. But he had told the boss that he knew how to get out of the way; they had been blasting several days. They all knew they were liable to be hit if they did not get out of the way, and the boss had on more than one occasion told them to go in the stable. They all understood the danger.

It is also insisted that the case should have gone to the jury on the ground that the boss knew they were in a place of danger and did not take steps to avert the danger to them. But while the boss might have seen them if he had looked, the evidence fails to show that he in fact did know that they had stopped at the point where they were. He had a right to assume that they would obey his instructions, because it was a part of their duty to warn travelers on the way. After the fuse was lighted, the boss had himself to go to a place of safety, and it is by no means clear that if he had looked after he got to a place of safety, that he could then have averted the danger in which Corley and Bandy had placed themselves. We therefore conclude that the circuit court properly instructed the jury peremptorily to find for the defendants.

Judgment affirmed.